Larry Lassiter filed a complaint in the nature of an action in ejectment against Vance Turner seeking to recover possession of an undivided one-half interest in and to all oil, gas, and minerals in, on, or under a twenty-acre tract in Escambia County, Alabama. The complaint was amended to add a second claim for declaratory relief in regard to the instruments in dispute in this cause. Turner denied the allegations of the complaint as amended, filed affirmative defenses (estoppel, waiver, and fraud), and filed a counterclaim for reformation of the deed from Lassiter to Turner and for fraud and misrepresentation. James W. Elliott, Jr., and Beau Camp Oil and Gas Corporation, who were lessees of oil, gas, and minerals on the twenty acres of Lassiter and Turner respectively, and the wives of Lassiter and Turner were added as parties.
Motions for summary judgment filed by the Lassiters and Elliott were granted by the trial court. The Turners appeal. We affirm.
Archie James owned the entire interest in the surface and minerals of the twenty-acre tract involved in this litigation when he died intestate, leaving an undivided interest to each of his sons, Raymond Lee James and John Russell James. In 1975, John conveyed his half interest in the surface to Raymond, reserving the oil, gas, and mineral rights. On May 24, 1976, John conveyed an undivided half interest in said minerals to Raymond and in the same instrument reserved an undivided half interest in said minerals to himself. On the same day (May 24, 1976), Raymond and his wife conveyed by warranty deed the entire twenty acres, without any reservation of "oil, gas, or minerals" interest, to Lassiter. On October 12, 1977, John conveyed a one-half interest in minerals to Raymond and his wife. On April 14, 1978, Lassiter conveyed to the Turners the same twenty acres "LESS AND EXCEPT all oil, gas and minerals, one-half of which have [sic] been reserved by prior owners and one-half of which the undersigned expressly reserves unto himself, his heirs and assigns." In July 1981, Turner obtained a transfer of royalty and mineral interests to an undivided one-half interest in all oil, gas, and minerals in the twenty-acre tract from Raymond and his wife.
The basic objective in construing the terms of a deed is to ascertain the intention of the parties, especially the grantor, and if that intention can be found from the entire instrument, arbitrary rules of construction need not be used. FinancialInvestment Corp. v. Tukabatchee Area Council, Inc., Boy Scouts ofAmerica., 353 So.2d 1389 (Ala. 1977).
Upon consideration of the entire deed, when it clearly appears that the grantor intended to reserve or except mineral rights, the reservation or exception will be sufficient, even though the granting clause contains words of inheritance without exception and reservation. It clearly appears that Lassiter intended to reserve and except oil, gas, and mineral rights. *Page 380 Holmes v. Compton, 273 Ala. 554, 142 So.2d 697 (1962).
In ascertaining the intention of the parties to a deed, the deed's terms must be legally presumed to have intended what is plainly and clearly set out. Financial Investment Corp. v.Tukabatchee Area Council, Inc., Boy Scouts of America, supra, citing Camp v. Milam, 291 Ala. 12, 277 So.2d 95 (1973). "LESS AND EXCEPT ALL oil, gas and minerals." Under the facts of this case: "All" is all. "All" is not ambiguous. "All" is not vague. "All" is not of doubtful meaning.
It is not necessary to discuss whether Raymond and his wife owned all of the mineral interests at the time that they conveyed by warranty deed the twenty acres without reserving or excepting any mineral interests. It is probable that they did (see Morganv. Roberts, 434 So.2d 738 (Ala. 1983)). However, on October 12, 1977, Raymond and his wife acquired all of the mineral interests owned by John. This was after Raymond and his wife had given the warranty deed to Lassiter. Under the doctrine of after acquired title, Lassiter immediately acquired title to the minerals when such title was subsequently acquired by his grantors.
There are numerous Alabama cases which support the after-acquired-title proposition of law, and one of the best statements is contained in Doolittle v. Robertson, 109 Ala. 412,19 So. 851 (1895):
 "In no State perhaps has the rule been more rigidly adhered to than in this, `that when one sells land to which he has no right, with warranty of title, and he afterwards acquires a good title, it passes instantly to his vendee, and he is estopped from denying that he had no right at the time of the sale.' . . ."
In Porter v. Henderson, 203 Ala. 312, 82 So. 668 (1919), this Court declared:
 "[I]f one having no title convey[s] lands by express warranty or by the warranty which the law implies from the use of the words `grant, bargain, sell, and convey,' and thereafter acquires title, `such title will inure and pass eo instanti to his vendee. . . .'"
In Floyd v. Andress, 246 Ala. 301, 20 So.2d 331 (1944), we held:
 "[W]here, at the time of execution of deed, grantor had no title to part of property described, title subsequently acquired by grantor inures to benefit of grantee under warranty in deed. . . ."
Does the phrase which follows this unambiguous exception make the exception ambiguous when half of such oil, gas, and minerals has not in fact been reserved by prior owners: "[O]ne-half of which have [sic] been reserved by prior owners and one-half of which the undersigned expressly reserves unto himself, his heirs and assigns."?
It does not. This was addressed by this Court in the case ofUnion Oil Company of California v. Colglazier, 360 So.2d 965
(Ala. 1978), where a trial court had granted summary judgment in a declaratory action and the procedural posture of that case was substantially similar to the posture of the present case. In that case, there was a reservation of "`[a]n undivided one-half (1/2) interest in and to the oil, gas and minerals, . . . same having been reserved to G.C. Coggin Company, Inc.'" In fact Coggin had not reserved such undivided one-half interest. This Court held:
 "We find that the deed in question, taken as a whole, is not ambiguous and clearly expresses an intention to except from the grant an undivided one-half interest in the oil, gas and minerals. The clause referring to the prior reservation is merely an erroneous recitation of fact, and does not operate to void the exception or pass the entire fee interest."
In Union Oil, this Court concluded that the deed was not ambiguous and clearly excepted an undivided one-half of the mineral interest.
We conclude that the deed in the case at issue was not ambiguous and clearly excepted all oil, gas, and minerals. The phrase "one-half of which have been reserved by prior owners" is merely a recitation *Page 381 
of fact, which may or may not have been erroneous, and it does not make the deed ambiguous. The deed from Lassiter to the Turners clearly excepted all oil, gas and minerals.
The effect of the application of the doctrine of after acquired title to the undisputed facts in this case is that Lassiter acquired all mineral rights acquired by Raymond and his wife, immediately upon their acquiring such rights, i.e., on October 12, 1977. Therefore, Raymond and his wife had no interest in such minerals at the time that they executed the transfer of royalty and mineral interests to the Turners in June 1981.
The misrepresentation and fraud counts of the Turners' counterclaim were predicated upon all oil, gas and minerals, instead of one-half thereof, having been reserved in the deed from the Lassiters to the Turners.
Section 6-2-39, Code 1975, provides for a one-year limitation of actions on fraud. Section 6-2-3, Code 1975, limits the accrual of the claim to one year after discovery of facts constituting fraud.
Fraud is deemed to have been discovered when the person either actually discovered it, or when the person ought to or should have discovered the facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered. Gonzales v. U-J ChevroletCo., 451 So.2d 244 (Ala. 1984); Cooper Chevrolet, Inc. v. Parker
[MS. December 6, 1985] (Ala. 1985).
It is undisputed that the deed was given to Turner in April 1978. It was dated April 14, 1978, and filed for record and recorded on April 17, 1978. At that time, the Turners could have seen that Lassiter reserved and excepted all of the oil, gas, and minerals. The counterclaim was not filed until 1983.
However, Ala.R.Civ.P., Rule 13 (c), provides:
 "All counterclaims other than those maturing or acquired after pleading shall relate back to the time the original plaintiff's claim arose."
In this case, the fraud action arose out of the same transaction or occurrence that formed the basis of the plaintiff's claim in the nature of ejectment; and, therefore, it is a compulsory counterclaim under Rule 13, Ala.R.Civ.P., and cannot be defeated by the general statute of limitations for fraud actions. Campbell v. Regal Typewriter Co., 341 So.2d 120
(Ala. 1976).
There was a scintilla of evidence of fraud presented in the affidavits of Turner, Robert White, Wayne Turner, and Leon Coleman, Jr. Therefore, summary judgment is improper as to the Turners' counterclaim seeking damages for fraud.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and BEATTY, JJ., concur.