This appeal involves the interpretation of a warranty deed and the oil, gas, and mineral rights thereby conveyed. The trial court awarded a 1/4 interest to the appellants and a 1/4 interest to the appellees. We reverse, holding that the appellants are entitled to a 1/2 interest.
The facts relevant to this controversy had their beginning in 1929 when D.C. Holloway and his wife deeded property to Ed Minor, reserving a 1/2 interest in the oil, gas, and mineral rights. In 1946, Minor and his wife conveyed the subject property to J. Tom Taylor by warranty deed containing the following language:
 "Know all men by these presents that for and in consideration of one thousand dollars to the undersigned grantor Ed Minor and wife Annie Minor in hand paid by J. Tom Taylor (the receipt whereof is hereby acknowledged), we do grant, bargain, sell and convey unto the said J. Tom Taylor the following Real Estate, to-wit: [a metes and bounds description of the property is then set out]. The grantor herein hereby reserves a 1/2 interest in oil, gas, and mineral rights reserved, also the right of ingress and egress for the purpose of developing oil, gas, and minerals."
Additionally, the 1946 deed contained express covenants of warranty that the grantors were "lawfully seized in fee simple of said premises"; that the conveyed property was "free of all encumbrances"; and that the grantors had "a good right to sell and convey the same as aforesaid . . . and . . . shall warrant and defend the same to the said J. Tom Taylor, his heirs, executors, and assigns, forever, against the lawful claims of all persons." The plaintiffs and defendants in the present action are the heirs and successors in interest of Ed Minor and J. Tom Taylor, respectively.
From these stipulated facts, the following issue emerges: If a warranty deed grantor does not own an interest great enough to satisfy both the grant and the purported reservation, does the covenant of warranty require that the "reserved" interest yield to the granted interest? Reduced to its simplest terms, then, the issue is: Under these facts, where the granting clause and the reservation are in conflict, which of the two prevails?
In cases where a warranty deed is supported by consideration, and the grantor's interest is insufficient to give effect to both the grant and the reservation, the reservation must fail and the risk of title loss is on the grantor. In addressing this issue, we are not writing on a clean slate. A similar question has been answered in Morgan v. Roberts, 434 So.2d 738
(Ala. 1983) This Court's holding with respect to the same basic issue is found at 739-40:
 "Could the Morgans retain a 1/4 interest in the mineral rights when they in fact warranted title to the Robertses in a 3/4 interest, but only owned for themselves 1/2 of such interest to begin with because of their prior conveyance?
 "We hold that Appellant's reservation of 1/4 the mineral interests from the conveyance to the Robertses was contrary to, and in direct violation of, the obligations of the Morgans under their warranty deed. The Morgans could not convey and warrant to the Robertses and reserve and retain unto themselves the same thing at the same time. Their warranty obligations were superior to their reservation of rights in the mineral interests. Brannon v. Varnado, 234 Miss. 466, 106 So.2d 386
(1958)."
While this seems to be clear, the confusion in this area apparently arises in determining the quantity of interest required to give effect to both the grant and the reservation.
A fundamental premise in construing a deed is that the intent of the parties is to be ascertained from the face of the document. Lietz v. Pfuehler, 238 Ala. 282, 215 So.2d 723
(1968). In situations where there are express reservations or exceptions, "The key question is, not what the grantor purported to retain for himself, but what he purported to give to the grantee." 1 Williams Myers, Oil and Gas Law, § 311, p. 115 (1986). (At this point we acknowledge much guidance from Williams *Page 63 
and Myers, not only in setting out the issue, but also in resolving it.)
Specifically, there are three quanta of interest that must be ascertained in order to construe a deed that contains a reservation. 1 Williams Myers, § 311, at 115-16. First, the quantum of interest specified in the granting clause must be determined. If the granting clause does not expressly limit the grant to a lesser amount, then the quantum of interest purportedly conveyed is 100 percent of all right, title, and interest. Reichert v. Jerome H. Sheip, Inc., 222 Ala. 133,131 So. 229 (1930). The next step in this process is to ascertain the quantum of interest reserved in a subsequent clause.
The final quantum to be determined is that quantum of interest the grantee is to receive under the deed. This amount can be calculated by subtracting the quantum of interest reserved to the grantor from the quantum of interest conveyed in the granting clause.
In the instant case, the quantum of interest specified in the granting clause, as set out above, is 100 percent of all right, title, and interest, including mineral interests, in the described property. The language of the granting clause is clear and unambiguous and subject only to this interpretation.
Next, we focus our attention on the reservation. The grantors expressly reserved a 1/2 interest in the oil, gas, and mineral rights reserved. In their complaint, the plaintiffs alleged that this clause reserved unto the grantors 1/2 of all the oil, gas, and other minerals. However, on appeal, these same parties argue that the language of the reservation is ambiguous, and that the trial court was justified in receiving parol evidence in order to to determine the actual intent of the parties, and that the trial court correctly determined that the plaintiffs and defendants each owned 1/4 of all the oil, gas and other minerals.
In analyzing the language of the reservation clause, it is clear that the largest possible quantum of interest reserved by the grantor is 1/2. This is the amount originally claimed by both parties, and the complaint, as originally worded, was filed in order to determine the owner of this interest, not to determine the quantum of interest reserved. In accordance with the evidence presented in this case, we hold that the reservation clause in question reserved 1/2 of all the oil, gas, and other minerals.
To conclude that a lesser amount was reserved would result in a purported conveyance to the grantees of an amount greater than 1/2. Such a finding would allow the grantees to maintain an action for breach of warranty for that quantum of interest the grantors could not convey because they were not the owners. Since this position was not taken by any party, we find the original posture of the action, as one to determine ownership, to be persuasive, and we herein hold that the reservation clause reserved 1/2 of all the oil, gas, and other minerals.
We now arrive at the crux of the problem: which 1/2 of the minerals did this deed reserve? Did it reserve the 1/2 interest outstanding in Holloway, or did it reserve 1/2 of the minerals to Minor in addition to the 1/2 interest outstanding in Holloway?
The appellees contend that at the time of the conveyance in 1946, the grantees had actual knowledge of the outstanding interest in Holloway. Therefore, they argue, the grantees knew or should have known that the reservation by Minor was in addition to the outstanding interest in Holloway. As stated in 1 Williams Myers, § 311, p. 116-17 (assuming a third party owns 1/2 of the minerals and the deed expressly reserves 1/2 of the minerals):
 "It is reasonable to infer that the parties intended for [the grantee] to receive one-half of the minerals and that [the grantor] was excepting from the deed the one-half mineral interest he did not own . . . On the other hand, a second reasonable construction is available, namely that [the grantee] purchased only the surface and the parties intended for [the grantor] to retain one-half of the minerals for himself in addition to the one-half interest outstanding in [a third *Page 64 
party]."[1]
Of course, the choice between these conflicting constructions depends upon whether it is proper to consider extraneous evidence in the resolution of this conflict.
First, we begin with the maxim that the intention of the parties is to be determined by the language of the deed. In a suit to construe an unambiguous instrument, actual knowledge of the parties, oral statements of the parties, and other matters are inadmissible. If the instrument is ambiguous, then these extraneous matters may be admissible in an action to reform the instrument. However, in an action to construe an instrument, matters should not be considered that are not available to one who innocently purchases from the grantee in the future. The subsequent purchaser should be able to rely on the interpretation of the deed alone, and should not be required to ascertain the prior grantee's actual notice of the outstanding interest. We hold that in an action to construe an unambiguous instrument, the actual knowledge of the grantee is not a factor to be considered, and the dicta in Morgan v. Roberts,434 So.2d 738 (Ala. 1983), suggesting that there is an actual knowledge exception in Alabama should be disregarded. In summary, actual notice should be treated as immaterial in all actions to construe an unambiguous instrument.
Having stated that matters unavailable to subsequent purchasers should be inadmissible, we now address the derivative issue regarding the interpretation of an unambiguous instrument when the grantee has constructive knowledge of an outstanding interest. Does constructive notice of the outstanding interest aid in determining the parties' intention? We are not convinced that, at this time, the public records are so reliable, see Whitehead v. Hester, 512 So.2d 1297 (Ala. 1987), that the intention of the parties can be ascertained by coupling the language of the present instrument with previously recorded documents.
A couple of examples will illustrate why constructive notice should not be admissible in construing an unambiguous instrument:
 1. A third party owns 50 percent of the minerals and his ownership is properly recorded. The grantor owns all of the surface and the other 50 percent of the minerals. The grantor intends to convey to the grantee all of his interest, but a reservation of 50 percent of the minerals, intending to reserve the outstanding 50 percent, is included in the deed so that the grantor will not be in breach of warranty.
 2. Suppose the grantor and the grantee both assume that the grantor is the owner of 100 percent of the minerals, but, in fact, a third party is the record owner of 50 percent of the minerals. (Again, see Whitehead, supra, for an example of a confused record title.) The grantor wants to keep 1/2 the minerals for himself, but the grantee bargains for the other 50 percent of the minerals.
See Williams Myers, § 311, at 118.
Surely, in both examples, the grantee is entitled to 50 percent of the minerals. If constructive notice is admissible, however, the true intent of the parties will be defeated. Therefore, we reaffirm the axiom that extraneous evidence, including evidence of constructive notice, is not admissible in actions to construe an unambiguous instrument.
Recognizing that compelling examples can be made for the proposition that constructive notice should be one of the factors considered in construing a deed, we note that the rule barring consideration of actual or constructive notice adds an element of certainty to titles and allows future purchasers to rely upon the record title. To hold otherwise would reject the standard of objective interpretation in favor of equitable results that may be obtained by consideration of subjective *Page 65 
factors. Lowe, Oil and Gas Law, p. 128 (1983). The effect of adopting the alternative method would be that virtually every property title in this State would be subject to protracted litigation in order to ascertain the actual subjective intent of the parties. Additionally, to hold otherwise would render a covenant of title essentially meaningless if it guaranteed only the interest the grantor actually owned. Lowe, at 130.
Looking only to the deed, if the deed purports to deal with 100 percent of the minerals, then the only logical interpretation is that "the grantee is to receive that percentage or fractional interest in the land not reserved to [the] grantor." Williams Myers, § 311, at 119. Applying this formula, we find that the purported conveyance of 100 percent, less a reservation of 50 percent, left a conveyance to J. Tom Taylor of 50 percent of all oil, gas, and other minerals. Minor could not convey any portion of the minerals that were outstanding in Holloway, and Taylor could look only to the interest owned by Minor to satisfy the quantum of interest conveyed. Since Minor owned only 50 percent of the minerals at the time of the conveyance, it was necessary for all of his interest to be transferred to Taylor in order to satisfy the mandate of the granting clause.
Our analysis of the evidence leads us to the conclusion that the appellants are the owners of 1/2 of all oil, gas, and other minerals and that the appellees are entitled to no interest in the oil, gas, and other minerals.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] Williams and Myers are of the opinion that the first construction is the better rule and that actual notice should be inadmissible in a deed construction case. See, 1 Williams 
Myers, Oil and Gas Law, § 311, p. 116-19 (1986).